IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| W.H., a minor, by L.P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:13-cv-000234-MW-CAS |
| | ) |
| LEON COUNTY SCHOOL BOARD, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Defendant Leon County School Board ("School Board"), by and through undersigned counsel and pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1, hereby moves to dismiss the Amended Complaint filed by the Plaintiff on the grounds that the Plaintiff has failed to timely serve process and has failed to exhaust his administrative remedies with respect to several of his claims.

**INTRODUCTION**

The principal issue presented in this motion is whether a plaintiff should be permitted to intentionally defeat the sound congressional policy embodied in the ninety-day limitations period required for parents to appeal the results of administrative due process hearings initiated pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (the "IDEA"); 20 U.S.C. § 1415(i)(2)(B). The facts developed below should make clear to the Court that (1) on the ninetieth day after the Plaintiff in this action received an unfavorable result in an administrative hearing, the plaintiff—through experienced counsel—filed a document in this Court that was not a pleading but was intended to serve merely as a placeholder to prevent the running of IDEA's short limitations period; and (2) the Plaintiff neither filed nor attempted to serve an actual complaint in this action until after the 120-day time limit for service of process provided in Rule 4(m) had already expired. Although the Court has discretion to excuse the

violation of Rule 4(m), this is not a case in which that discretion should be exercised because of the need for finality in matters relating to educational decisions involving disabled children, embodied in the IDEA's short limitations period.

The Eleventh Circuit has explained in very clear terms why adherence to a short limitations period is so important in the IDEA context. According to the court:

> The most effective means of ensuring disabled children receive an education tailored to meet their specific needs is to provide prompt resolution of disputes over a child's [individualized education plan ("IEP")]. A brief limitations period guarantees students will receive their statutorily prescribed education when they can most benefit from it. The IDEA recognizes children develop quickly and once correct placement decisions can soon become outdated. If the limitations period for judicial review under the IDEA is too long, appropriate remedies will be delayed by potentially protracted litigation.

Cory D. ex rel. Diane D. v. Burke Cnty. Sch. Dist., 285 F.3d 1294, 1299 (11th Cir. 2002) (internal citations omitted); accord, e.g., Schaffer ex rel. Schaffer v. Weast, 554 F.3d 470, 476 (4th Cir. 2009) ("[P]rolonged litigation and a lack of finality disserve the IDEA's purpose of including disabled students in the public education system as quickly as possible . . . [a]nd perpetual litigation due to the introduction of new evidence also would force school districts to divert scarce resources to the already substantial costs of IDEA litigation . . . .").

The Court should hold that adherence to the Eleventh Circuit's instruction in Cory D. compels dismissal of the Plaintiff's claims that were required to be brought within ninety days of the administrative ruling. The majority of plaintiff's remaining claims (which are based on events occurring after the administrative proceeding) are due to be dismissed as well, without prejudice, for failure to exhaust administrative remedies. These claims are not foreclosed because "the IDEA requires IEPs be reviewed and revised at least annually, allowing parents to litigate anew the merits of each subsequent IEP." Cory D., 285 F.3d at 1300. However, claims asserting the educational rights of disabled children brought pursuant to the IDEA or Section 504 "must first be exhausted in state administrative proceedings." M.T.V. v. DeKalb Cnty. Sch. Dist., 446 F.3d 1153, 1158 (11th Cir. 2006). For these reasons, developed more fully below, the

Plaintiff's Amended Complaint should be dismissed in whole or in part.

## BACKGROUND

**Statutory Framework**

The IDEA is a federal statute targeted to ensure public school students with disabilities have access to a basic floor of educational opportunity. The IDEA accomplishes its mission by requiring public schools to provide all disabled children with "a free appropriate public education ['FAPE'] that emphasizes special education and related services designed to meet [each child's] unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). FAPE is provided through an individualized education plan ("IEP") developed for each student determined to be an eligible child with a disability. M.M. ex rel. C.M. v. Sch. Bd. of Miami-Dade Cnty., 437 F.3d 1085, 1095 (11th Cir. 2006). The IEP is developed by an IEP team, normally consisting of the student's parents, regular education and special education teachers, a School Board representative, other individuals with relevant expertise, and the student, if appropriate. Id.

The IDEA contains extensive procedural safeguards for parents, providing parents with significant due process rights at every stage of development and implementation of an IEP. These procedural rights include, among other things, the right to examine all records related to the child, the right to written notice of changes or refusals to change the identification, evaluation, or placement of the child, and, of greatest significance in this case, rights to a due process hearing and judicial review. See 20 U.S.C. § 1415(b). In Florida, due process hearings are formal evidentiary hearings conducted by the Florida Division of Administrative Hearings ("DOAH"), pursuant to state statute and a contract between DOAH and FLDOE, see § 1003.57(1)(b), Fla. Stat.; 6A-6.03311, Fla. Admin. Code.

A parent who is unsatisfied with the conclusions of the DOAH administrative law judge ("ALJ") has a right to bring a civil action in this Court or Florida circuit court. 20 U.S.C. §1415(i)(2)(A). However, the aggrieved parent must initiate the action within ninety days of the date of the ALJ's decision. 20 U.S.C. § 1415(i)(2)(B). As provided above, the Eleventh Circuit

has recognized that the IDEA has a short limitations period for a reason: "[t]he most effective means of ensuring disabled children receive an education tailored to meet their specific needs is to provide prompt resolution of disputes over a child's IEP." Cory D., 285 F.3d at 1299; accord, e.g., C.M. ex rel. J.M. v. Bd. of Educ. of Henderson Cnty., 241 F.3d 374, 380 (4th Cir. 2001) ("[T]he Act embodies a federal policy that IDEA disputes should be resolved quickly to ensure that disabled children receive their statutorily guaranteed free appropriate public education while they can most benefit from it."); Amann v. Town of Stow, 991 F.2d 929, 932 (1st Cir. 1993) (internal citations omitted) ("The legislative history, statutory terms, and regulatory framework of the IDEA all emphasize promptness as an indispensable element of the statutory scheme.").

By contrast with the IDEA, Section 504 is a broad anti-discrimination statute not tailored to the education setting. Section 504 protects individuals with disabilities by prohibiting entities receiving federal financial assistance from discrimination against such individuals "solely by reason of . . . disability." 29 U.S.C. § 794(a). However, Section 504's generic prohibition has application in this setting, through implementing regulations, which require school boards to "provide a [FAPE] to each qualified handicapped person who is in the [school board]'s jurisdiction," 34 C.F.R. § 104.33(a). FAPE under Section 504 is not as precisely defined as under the IDEA; however, Section 504's implementing regulations provide that "[i]mplementation of an [IEP] developed in accordance with the [IDEA] is one means of meeting" the Section 504 substantive FAPE requirement, 34 C.F.R. § 104.33(b)(1), and "[c]ompliance with the procedural safeguards of [the IDEA] is one means of meeting" Section 504's procedural requirements, 34 C.F.R. § 104.36.

By its plain terms, the IDEA does not restrict or limit the rights and remedies available under Section 504. 20 U.S.C. §1415(l). However, the IDEA does require that Section 504 claims relating to the educational rights must "be exhausted to the same extent as would be required had the action been brought under [the IDEA]." Id. "The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities." N.B. by

4

D.G. v. Alachua Cnty. Sch. Bd., 84 F.3d 1376, 1378 (11th Cir. 1996) (internal quotation and alterations omitted). "Thus, whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings." M.T.V., 446 F.3d at 1158; see also Babicz v. Sch. Bd. of Broward Cnty., 135 F.3d 1420, 1422 n.10 (11th Cir. 1998) ("[A]ny student who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute.").

## Facts as Alleged and Procedural Background

### a. the Amended Complaint's allegations and the administrative due process hearing

The Plaintiff in this action, W.H., is an elementary school-aged student served by the Defendant School Board, currently in the second grade, who is appearing in this action through his mother, L.P. ("Mother"). Amended Complaint, ¶¶ 1, 2, 11. The Plaintiff has been determined to be a child with a disability, eligible for special education services under the IDEA, Amended Complaint, ¶¶ 3, 4, and alleges that he has been denied FAPE in a number of ways due to procedural and substantive violations of the IDEA, beginning in the 2010-11 academic year. Amended Complaint, ¶¶ 80, 81, 86, 88. The Amended Complaint also contains analogous claims under Section 504, in which the Plaintiff claims that essentially the identical actions that form the basis of his IDEA claims constitute intentional disability discrimination under Section 504 as well. See, e.g., Amended Complaint, ¶¶ 96-98.

The majority of the allegations underpinning these claims were the subject of the administrative due process hearing described in the Amended Complaint. The Plaintiff initiated that administrative proceeding on August 16, 2012, alleging violations of the IDEA and Section 504, which were analogous to the claims alleged in this action except that the challenged conduct did not extend beyond September 2012. The presiding ALJ summarily dismissed the Plaintiff's Section 504 claim then conducted a five-day evidentiary hearing in October 2012. Amended Complaint, attachment, at 1-2. During the hearing, the ALJ heard evidence of the Plaintiff's

educational progress extending through the first month of the 2012-13 academic year. Amended Complaint, attachment, at 48-49.

On January 25, 2013, the ALJ entered the 68-page final order attached to the Amended Complaint, which contained detailed factual findings and concluded that the School Board had not denied the Plaintiff FAPE during the academic years at issue, except in the limited sense that the School Board should have admitted the Plaintiff to its Summer Reading Academy program during the summer of 2012. Amended Complaint, attachment, 46-47, 67. Specifically, the ALJ held "[t]hat the School Board has not denied [the Plaintiff] a free and appropriate public education during the 2010-2011 school year; during the 2011-2012 school year; or during that portion of the 2012-2013 school year for which [the Plaintiff] alleged violations of IDEA," but that "the School Board's decision to deny [the Plaintiff] attendance at the appropriate and available Summer Reading Academy" after first grade resulted in a "limited denial of FAPE," isolated to this specific decision. Amended Complaint, attachment, 67. In accordance with this decision, the ALJ awarded the Plaintiff $1,080, reflecting the cost of his attendance in a private school summer program (on the theory that it was necessitated by the denial of placement in the Summer Reading Academy).[1]

### b. the Plaintiff's delayed initiation of this action

As provided above, the IDEA requires parents aggrieved by administrative rulings to initiate a civil proceeding within ninety days from the date of the ruling. 20 U.S.C. § 1415(i)(2)(B). The ninetieth day after the ALJ entered his order underlying this action was April 23, 2013, and on April 23, 2013, Plaintiff initiated this case by filing a document styled as "Complaint and Jury Demand." The document, however, is not a pleading. At best, the document can be described as a very rough, incomplete draft of what might eventually become a pleading. Although the document is 23 pages long, the vast majority of these pages are either

---

[1] The School Board believes this limited portion of the ALJ's decision constitutes legal error, as the ALJ departed from the elements of a claim for extended school year ("ESY") services prescribed in statute and rule. However, the School Board chose not to challenge the $1,080 award because an independent appeal on this issue would not have been a pragmatic use of public funds.

completely blank or contain randomly scattered and indecipherable letters, numbers, symbols, and sentence fragments. As examples, page 4 contains only the following allegation: "Stude the statutory;" page 8 contains only the following allegation: "ST that he also needs for academic work;" and pages 5-7, 9-13, and 15-17 are all either completely blank or contain blank partial outlines. In total, the document contains approximately one page of disjointed and incomplete allegations, which should make clear to the Court that this document was never intended to be a pleading pursuant to which the Plaintiff would ever seek relief.

Plaintiff's enumerated counts, which arrive after twenty virtually blank pages, provide as follows: count one, which states that it seeks relief for procedural violations of the IDEA, contains one paragraph (and no redactions), which provides, in its entirety: "119. All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full;" count two, which states that it seeks relief for substantive violations of the IDEA, contains the identical paragraph, no other allegations, and no redactions; and the Plaintiff's third and final count contains no allegations at all and no obvious redactions.

The state of the initial "complaint" cannot be explained away by any lack of sophistication on the part of the Plaintiff. The Plaintiff is not appearing pro se. Instead, he is represented by a lawyer who has represented herself to this Court in another recently filed IDEA/Section 504 case, D.F., by L.M.P. vs. Leon County School Board, No. 4:13-cv-00003-RH-CAS ("D.F."), as possessing nearly two decades of experience in the area of special education law.[2] A comparison of the initial, redacted complaint filed in that case[3] to the initial "complaint" filed here should make clear to the Court that counsel knew how to, but chose not to draft an actual pleading in this case and filed the document at issue to merely serve as a placeholder, to avoid the running of the IDEA statute of limitations, until counsel was ready to draft a pleading.

In light of the foregoing, it should not be surprising that the Plaintiff did not make

---

[2] See Affidavits of Mark Kamleiter and Rosemary Palmer, attached to Plaintiff's Response in Opposition to LCSB's Motion to Disqualify Counsel, D.F., Dkt. No. 30.
[3] D.F., Dkt. No. 1.

diligent efforts to effect service of the initial "complaint." In fact, the Plaintiff made no effort at all. The Plaintiff never requested the School Board waive formal service, never sought the issuance of a summons, and, accordingly, never attempted to serve this document.

August 21, 2013 was the 120th day after the initial "complaint" was filed. On August 27, 2013, an entry was made in the Court's docket that action was required by the Court due to lack of activity. Responding to the docket entry on August 27, 2013, the Plaintiff filed the Amended Complaint on August 29, 2013 – the 216th day after the conclusion of the underlying administrative proceeding, and the 128th day after the action was initiated.

## MEMORANDUM OF LAW

### I. Introduction

The Amended Complaint contains three counts, all of which should be dismissed in whole or in part either because of insufficient service of process (for reasons that should not be excused) or because of the Plaintiff's failure to exhaust administrative remedies. The Plaintiff's IDEA claims should be dismissed to the extent they arise out of conduct that was at issue in the October 2012 administrative due process hearing because the Plaintiff failed to timely serve process, and should not be excused for the delay, as excusing the Plaintiff's failure under the unique circumstances of this case would defeat Congress's sound public policy embodied in the IDEA's short, ninety-day limitations period. As detailed above, the Plaintiff filed a document that did not and was never intended to constitute a pleading, on the last possible day, for the exclusive purpose of avoiding the running of the statute of limitations. The Plaintiff did not file an actual pleading until 216 days after the conclusion of the state administrative proceeding.

The Plaintiff's Section 504 claims that correspond with his IDEA claims at issue in the administrative hearing should be dismissed as well, at least in part, because the School Board is entitled to rely on its provision of FAPE under the IDEA to satisfy its obligations under Section 504. Regulations implementing the IDEA and Section 504 make clear that a school district's compliance with the procedural and substantive components of FAPE under the IDEA also

constitute compliance with the analogous components of FAPE under Section 504. See 34 C.F.R. § 104.33(b)(1); 34 C.F.R. § 104.36. The ALJ's holding, supported by detailed findings, was that the School Board had not denied the Plaintiff FAPE during the period at issue, except with respect to the School Board's isolated decision to deny the Plaintiff placement in the 2012 Summer Reading Academy Program. The Plaintiff should not be permitted to resurrect his Section 504 claims as a consequence of his own procedural default of his right to judicial review of the administrative decision.

The Plaintiff's claims should also be dismissed to the extent they arise out of conduct that was not at issue in the October 2012 administrative hearing. The IDEA requires that all claims relating to the educational rights of disabled children, brought pursuant to the IDEA or Section 504, must first be exhausted in state administrative proceedings before they are filed in federal court. E.g., M.T.V., 446 F.3d at 1158. Accordingly, these claims should be dismissed to provide the Plaintiff with an opportunity to initiate an appropriate administrative due process proceeding in the Florida Division of Administrative Hearings.

## II. Plaintiff's IDEA claims at issue in the administrative hearing should be dismissed due to improper service of process.

Rule 4(m) of the Federal Rules of Civil Procedure requires Amended Complaints to be served within 120 days of filing. Undisputed facts establish that the plaintiff failed to comply with this requirement and cannot establish good cause for the failure. Although the Court retains discretion to either dismiss the action or extend the deadline for service even in circumstances where the plaintiff has no good cause for noncompliance with Rule 4(m), see Lepone-Dempsey v. Carroll Cnty. Comm'rs, 476 F.3d 1277, 1281-82 (11th Cir. 2007), the circumstances of this case militate strongly in favor of dismissal. For this reason, more fully developed below, the Plaintiff's IDEA claims at issue in the administrative hearing should be dismissed.

The Eleventh Circuit has held that resolving a motion to dismiss based on failure to comply with Rule 4(m) involves a two-part analysis: the district court must first determine

whether good cause exists for the failure. Id. If good cause exists, the inquiry ends; if good cause does not exist, the district court retains discretion but must consider any factors that may exist that justify extending the time period notwithstanding the absence of good cause. Lepone-Dempsey, 476 F.3d at 1282. Although the running of the statute of limitations is designated as a factor to consider, the Eleventh Circuit has made clear that "the running of the statute of limitations does not require that a district court extend the time for service of process under [Rule 4(m)]." Horenkamp v. Van Winkle And Co., Inc., 402 F.3d 1129, 1133 (11th Cir. 2005). As provided above, the decision of whether to dismiss a case or excuse the delay is commended to the discretion of the district court, to make a decision in light of the specific circumstances of the case. Id.; Lepone-Dempsey, 476 F.3d at 1280. The Court should dismiss this action due to the absence of good cause and the absence of factors that would indicate the Plaintiff's failure to comply with Rule 4(m) should be excused, notwithstanding the absence of good cause.

### a. The Plaintiff's miscalculation of the deadline to effect service does not constitute good cause.

The Eleventh Circuit has explained that the good cause showing required under Rule 4(m), requires the Plaintiff to demonstrate that his failure to effect service was due to "some outside factor, such as faulty advice." Lepone-Dempsey, 476 F.3d at 1282; see also, e.g Pridemore v. Regis Corp., No. 3:10–cv–605, 2011 WL 9120, at *2 (M.D. Fla. Jan.3, 2011) ("In determining good cause, courts have considered factors outside a plaintiff's control, such as sudden illness, natural catastrophe or evasion of service of process.") (internal quotations and citations omitted). Mistake or inadvertence attributable to the Plaintiff himself or the Plaintiff's counsel does not constitute good cause. Id.; see also, e.g., In re Trasylol Products Liab. Litig., 503 F. App'x, 850, 857 (11th Cir. 2013) ("apparent error" of plaintiff's counsel in failing to serve defendant did not constitute good cause); Pierce v. Kyle, 445 F. App'x 201, 202 (11th Cir. 2011) (mistake with respect to procedure was not good cause for delay).

In this case, absence of good cause should not be in dispute. On the day counsel for the

Plaintiff was notified of her failure to effect service within 120 days, she volunteered to undersigned counsel that she had erroneously calendared the deadline for service. Moreover, as provided above, the significance of the Plaintiff's error was magnified by the fact that he was not diligently seeking service. The Plaintiff neither requested the School Board waive formal service nor requested issuance of a summons within the 120-day service period. Indeed, once the Plaintiff sought issuance of a summons (on September 3, 2013), he was able to serve the School Board within 24 hours (on September 4, 2013).

The Court should hold that the concession of Plaintiff's counsel that the failure to serve was due to her own mistake establishes the absence of good cause, either in and of itself, or in light of the fact that the Plaintiff made no effort to effect service. In light of Plaintiff's counsel's concession, this issue should be undisputed.

### b. The Plaintiff's failure to effect timely service should not be excused under the circumstances of this case.

This Court may consider any factors it considers relevant in determining whether to excuse the Plaintiff's failure to effect timely service, even in the absence of good cause. Lepone-Dempsey, 476 F.3d at 1282. However, the Eleventh Circuit has only specifically identified three such factors, and all of these factors either weigh in favor of dismissal or at least do not weigh against it. The only factors specifically identified are: (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant is evading service; and (3) whether the defendant concealed a defect in attempted service. Lepone-Dempsey, 476 F.3d at 1282. Only the first of these factors has great significance here: the Court must consider whether dismissal will work unfairness due to the running of the relevant statute of limitations.[4] In this

---

[4] The second and third factors, to the extent relevant, militate in favor of dismissal because the implication of these factors is that the Court should deem relevant the level of diligence with which the plaintiff has attempted to effect service. The Court should consider relevant in its analysis that the Plaintiff in this case never sought a waiver of service nor sought issuance of a summons until the 120-day period prescribed for service had run. Indeed, for the reasons provided above, it should be clear to the Court that the Plaintiff never intended to serve and proceed on the basis of the original "complaint" filed in this case. Accordingly, it should be clear that the Plaintiff did not even file an actual pleading until after the service period had run.

case, if anything, the opposite is true. Congress has specifically intended a very short limitations period in IDEA actions, and the Plaintiff in this case has specifically endeavored to defeat that congressional purpose. Accordingly, excusing the Plaintiff's failure in this case would be an affront to a clear congressional purpose underpinning the statute on which the Plaintiff's principal cause of action is based.

The Eleventh Circuit has made clear that "absent a finding of good cause, a district court may in its discretion still dismiss a case even after considering that the statute of limitations has run." Panaras v. Liquid Carbonic Indus. Corp., 94 F.3d 338, 341 (7th Cir.1996), quoted in In re Trasylol Products Liab. Litig., 503 F. App'x at 857; Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1306 (3d Cir.1995) same); Horenkamp, 402 F.3d at 1133. Indeed, the Eleventh Circuit appears to regularly affirm such dismissals, as long as the district court has considered the factor prior to dismissing the action. E.g., In re Trasylol Products Liab. Litig., 503 F. App'x at 857; Boston v. Potter, 185 F. App'x 853, 854 (11th Cir. 2006). The Court should hold that this is a clear case warranting dismissal because, as provided above, the IDEA has an intentionally short limitations period, and the Plaintiff intended to obstruct the congressional purpose underpinning that short limitations period.

Congress's purpose was detailed by the Eleventh Circuit in Cory D., a case in which the court was required to supply a limitations period to the IDEA (because the IDEA as initially drafted did not specify a limitations period). The majority of circuits to have addressed the issue had adopted very short limitations periods, and the Eleventh Circuit followed suit. Because the case arose in Georgia, the court looked to Georgia law and adopted a 30-day limitations period. Cory D., 285 F.3d at 1299. In so doing, the court explained that "[t]he most effective means of ensuring disabled children receive an education tailored to meet their specific needs is to provide prompt resolution of disputes over a child's IEP" and that "[a] brief limitations period guarantees students will receive their statutorily prescribed education when they can most benefit from it." Id. According to the Court, "[t]he IDEA recognizes children develop quickly and once correct placement decisions can soon become outdated." Id. Accordingly, "[i]f the limitations period

12

for judicial review under the IDEA is too long, appropriate remedies will be delayed by potentially protracted litigation." Id. The court held that Congress "intended to prevent" unnecessary delay, and thus the "potential for indefinite lingering [associated with a longer limitations period would] clearly run[] afoul of the IDEA's objectives." Id. at 1301.

Lastly, the Eleventh Circuit in Cory D. observed that any "harshness" associated with the short limitations period was ameliorated by the fact that parents were free to challenge subsequent decisions involving their child's ever-changing educational placements. The court explained that, because "the IDEA requires IEPs be reviewed and revised at least annually," "[e]ven if parents neglect to appeal within the . . . limitations period, their children will only lose their 'appropriate' educational placement for a single school year." Id. at 1300.

Cory D. is still good law, notwithstanding the fact that Congress has now specified a limitations period. Indeed, the ninety-day period provided under the current law effectively validated the Cory D. decision, and decisions like it from other circuits, e.g., C.M. ex rel. J.M. v. Bd. of Educ., 241 F.3d 374 (4th Cir. 2001) (applying a 60–day statute of limitations); Dell v. Bd. of Educ., 32 F.3d 1053 (7th Cir.1994) (applying a 120–day statute of limitations), and rejected the minority view (which the Eleventh Circuit properly rejected in Cory D.) that the limitations period could be considerably longer, e.g., Janzen v. Knox Cnty. Bd. of Educ., 790 F.2d 484 (6th Cir.1986) (borrowing a three-year statute of limitations from state tort law). Subsequent to the amendment that supplied the ninety-day limitations period, courts have continued to recognize the policy underpinning Cory D.–that "prolonged litigation and a lack of finality disserve the IDEA's purpose of including disabled students in the public education system as quickly as possible . . . [a]nd perpetual litigation due to the introduction of new evidence also would force school districts to divert scarce resources to the already substantial costs of IDEA litigation . . . ." Schaffer ex rel. Schaffer v. Weast, 554 F.3d 470, 476 (4th Cir. 2009).

Indeed, courts outside of the Eleventh Circuit have addressed the precise question at issue here and have concluded that dismissal may be appropriate when a plaintiff has failed to comply with Rule 4(m), even if the plaintiff will be foreclosed from refiling due to the IDEA's short

limitations period. For example, the Ninth Circuit in Brandon H. v. Kennewick Sch. Dist. No. 17, 133 F.3d 925 (9th Cir. 1998), affirmed a district court's refusal to extend the time for service, which was premised on the district court's finding that the plaintiff's delays in attempting to effect service were "patently inconsistent with one of the principal policies underlining the IDEA: the expeditious resolution of claims." See also, e.g., Pierre ex rel. Pierre v. Dep't of Educ., No. 07 CIV. 6270(DLC), 2008 WL 2369224, at *3-4 (S.D.N.Y. June 10, 2008).

Applying the rationale of Cory D. to this case should make clear to the Court that dismissal is warranted notwithstanding the running of the statute of limitations with respect to the Plaintiff's older claims. Congress intended that judicial proceedings be initiated in earnest within ninety days of the conclusion of the administrative proceeding (i.e., by filing a pleading). In this case, however, as described in detail above, the only document filed during the limitations period, although styled as a "complaint," contains no meaningful allegations, no statement showing the Plaintiff is entitled to relief, and no demand for the relief sought. See Fed. R. Civ. P. 8(a). For the reasons stated above, it should be clear to the Court that this document was never intended to be a pleading in any meaningful, practical sense. Rather, it was intended to serve one purpose—to prevent the running of the IDEA's statute of limitations. Accordingly, it was intended to cause the sort of "indefinite lingering" that the short limitations period adopted by Congress was "intended to prevent." See Cory D., 285 F.3d at 1301.

Up to this point, this case has been characterized by nothing but "indefinite lingering." The Plaintiff did not file an actual, meaningful pleading until 216 days after the underlying administrative proceeding concluded. For this reason alone, the Court should not hesitate in dismissing these claims.

Moreover, the Court should conclude—as the Eleventh Circuit concluded in Cory D.— that any perceived harshness associated with dismissal is ameliorated by the fact that the Plaintiff is free to raise prospective claims. Indeed, the Plaintiff is free to reassert the claims raised in this case to the extent they involve actions that occurred after October 2012 (the date of the underlying administrative hearing). As provided below, these claims are due to be dismissed for

failure to exhaust administrative remedies, but the Plaintiff is not foreclosed from returning to this Court if he is unsatisfied with the outcome of that future proceeding.

>  III.   **Plaintiff's Section 504 claims that correspond with his IDEA claims at issue in the administrative hearing should be dismissed, at least in part, because the School Board is entitled to rely on its provision of FAPE under the IDEA to satisfy its obligations under Section 504.**

If the Court dismisses the Plaintiff's IDEA claims as requested in this motion, the Court should dismiss the Plaintiff's corresponding Section 504 claims as well, at least to the extent those claims do not arise directly out of the School Board's denial of the Plaintiff's placement in the Summer Reading Academy.  Federal regulations implementing the IDEA and Section 504 make clear that a school system is entitled to rely on its compliance with the IDEA in the provision of special education services to disabled students.  Section 504's implementing regulations "distinctly state that adopting a valid IDEA IEP is sufficient but not necessary to satisfy the § 504 FAPE requirements." Mark H. v. Lemahieu, 513 F.3d 922, 933 (9th Cir. 2008); Robert M. v. Hawaii, CIV. 07-00432 HG-LEK, 2008 WL 5272779, at *19 (D. Haw. Dec. 19, 2008) (dismissing plaintiff's Section 504 claims based on holding that the plaintiff had been provided FAPE under the IDEA).  As provided above, Section 504's substantive and procedural FAPE requirements are satisfied by compliance with the corresponding FAPE requirements of the IDEA.  See 34 C.F.R. § 104.33(b)(2); 34 C.F.R. §104.36.  Accordingly, courts need not address Section 504 claims when corresponding IDEA claims have already been denied.  Doe v. Alabama State Dep't. of Educ., 915 F.2d 651, 666 (11th Cir. 1990); Greer v. Rome City Sch. Dist., 762 F.Supp. 936, 948 (N.D. Ga. 1990); N.L. v. Knox Cnty. Schools, 315 F.3d 688, 695 (6th Cir. 2003) (finding firmly established that Section 504 claims should be dismissed when corresponding IDEA claims are dismissed).

As provided above, the ALJ in the underlying administrative proceeding specifically held that the School Board had not denied the Plaintiff FAPE under the IDEA during the 2010-11 and 2011-12 academic years, or during the portion of the 2012-13 academic year at issue in the

administrative hearing, except that a "limited denial of FAPE" arose out of one isolated decision—the School Board's refusal to place the Plaintiff in its Summer Reading Academy program during the summer of 2012.[5] Amended Complaint, attachment, 67. The School Board should be entitled to rely on the ALJ's findings that the School Board satisfied its obligations under the IDEA in all other respects. The Plaintiff had a full and fair opportunity to present his case in the underlying administrative hearing, and the Plaintiff would have had an opportunity to challenge this decision had the Plaintiff not unreasonably slept on his rights. This Court should not permit the Plaintiff to repackage these same claims under Section 504 merely because relief was denied under the IDEA in the administrative proceeding and the Plaintiff waived his right to appeal through his own inaction. To hold otherwise would provide the Plaintiff with an improper benefit from his IDEA procedural default. Accordingly, the Court should dismiss the Plaintiff's Section 504 claim, at least to the extent it does not directly relate to the School Board's decision to deny the Plaintiff placement in the Summer Reading Academy program.

**IV.     Plaintiff's IDEA and Section 504 claims not raised in the administrative hearing should be dismissed for failure to exhaust administrative remedies.**

"The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities." N.B., 84 F.3d at 1378. The "key reasons" underpinning the exhaustion requirement are: 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error." Id. at 1378-79.

"[B]ecause exhaustion is a prerequisite to the civil action contemplated by § 1415(l), a

---

[5] As provided above, the School Board believes this limited portion of the ALJ's decision constitutes legal error, as the ALJ departed from the elements of a claim for ESY services established in statute and rule.

16

parent's failure to exhaust administrative remedies by requesting and participating in a due process hearing will result in dismissal of the civil action." J.P. v. Cherokee County Bd. of Educ., 218 Fed. App'x 911, 912 (11th Cir. 2007). Failure to allege exhaustion in the complaint results in dismissal of the complaint. N.B., 84 F.3d at 1379-80.

Moreover, the Eleventh Circuit has specifically held that the IDEA limits a plaintiff's right to judicial review to only those claims that the plaintiff raised in the administrative proceeding. M.T.V., 446 F.3d at 1159; J.P., 218 Fed App'x at 913-14; see also, e.g., Doe v. Walker Cnty. Bd. of Educ., No. Civ. A 4:95-CV-0219-H, 1997 WL 866983, at *6 (N.D. Ga. Sept. 19, 1997) ("[B]ecause Plaintiff has failed to exhaust his administrative remedies with respect to the years subsequent to the 1993–94 school year, Plaintiff is barred from pursuing his IDEA claims for those years."); J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 570 F. Supp. 2d 1212, 1220 (E.D. Cal. 2008) (IDEA plaintiffs "cannot seek to litigate claims in federal court that arose subsequent to the time period at issue in the underlying proceeding."); Urban by Urban v. Jefferson Cnty. Sch. Dist. R-1, 89 F.3d 720, 725 (10th Cir. 1996) ("Nothing in the IDEA . . . states that a plaintiff need not exhaust administrative remedies if his objection to a second IEP is the same as his objection to his first IEP.").

The IDEA also explicitly adds to this the requirement that, before bringing claims under other statutes that "seek [ ] relief that is also available under this subchapter," the administrative procedures set forth in section 1415 must be exhausted "to the same extent as would be required had the action been brought under [the IDEA]." 20 U.S.C. § 1415(f). "This provision bars plaintiffs from circumventing IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute-e.g., . . . section 504 of the Rehabilitation Act, or the ADA," Jeremy H. by Hunter v. Mount Lebanon Sch. Dist., 95 F.3d 272, 281 (3d Cir. 1996), and instead mandates that the plaintiff "must use the IDEA's administrative system, even if he invokes a different statute." Babicz v. Sch. Bd. of Broward County, 135 F.3d 1420, 1422 n.10 (11th Cir. 1998). In other words, "claims asserted under Section 504 and/or the ADA are subject to [the IDEA's] requirement that litigants exhaust

the IDEA's administrative procedures to obtain relief that is available under the IDEA before bringing suit under Section 504 and/or the ADA." Id. at 1422; M.T.V., 446 F.3d at 1158.

This settled circuit precedent makes clear that the Plaintiff's claims arising out of actions that occurred after the conclusion of the October 2012 administrative due process hearing must be dismissed. All IDEA and Section 504 claims relating to a disabled student's education are subject to the IDEA's exhaustion requirement, and the Plaintiff does not allege that his IDEA and Section 504 claims have been exhausted in the administrative proceeding described in the Amended Complaint or in a subsequent due process proceeding. Accordingly, this unambiguous circuit precedent establishes that these claims are due to be dismissed because of the Plaintiff's failure to allege exhaustion of his administrative remedies.

WHEREFORE, the School Board respectfully requests that all of the Plaintiff's claims be dismissed in whole or in part.

DATED this 25th day of September, 2013.

Respectfully submitted,

*/s/ Erik M. Figlio*
ERIK M. FIGLIO
Florida Bar No.: 0745251
OPAL MCKINNEY-WILLIAMS
Florida Bar No.: 580082
Ausley & McMullen, P.A.
Post Office Box 391
Tallahassee, FL  32301
(850) 224-9115
rfiglio@ausley.com
omckinney-williams@ausley.com

ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic delivery this 25th day of September, 2013 to:

Rosemary Palmer
5260 Pimlico Drive
Tallahassee, FL  32309
floridalawlady@gmail.com

> */s/ Erik M. Figlio*
> Attorney